State v. Lopez

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-337-CR

THE STATE OF TEXAS STATE

V.

JUAN ZARATE LOPEZ APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

The State of Texas appeals the trial court’s order granting appellee Juan Zarate Lopez’s motion to suppress evidence.  The trial court granted appellee’s motion on the ground that there was no reasonable suspicion to justify the investigative stop that led to appellee’s arrest for driving while intoxicated (DWI).  We will reverse the trial court’s ruling and remand the case to the trial court. 

At 9:40 p.m. on November 23, 2002, Officer John Wesley Galloway responded to a call that painting equipment had just been burgled from the back of a couple’s truck, which was parked in front of their home.  It was dark outside, and visibility was poor because there were no street lights.  While Galloway was talking with the complainants in their front yard, appellee and a companion drove by very slowly.  The complainants told Galloway that they had seen the same truck—or what they thought was the same truck—drive by very slowly several times that night and therefore suspected that it might have been involved in the burglary.  

Although he had only about fifteen months’ experience as a Fort Worth police officer, Galloway was assigned to the police department’s burglary unit.  He knew from his experience that it was common for burglars to return to the scene of the crime if they had found particular equipment to steal the first time.  Based on the complainants’ information, the fact that a burglary had just occurred, his observation of the vehicle’s slow driving, and his knowledge of burglars’ behavior patterns, Galloway decided to stop appellee’s truck.  

Upon waiving him down, Galloway explained to appellee and his passenger that he was investigating a burglary of painting equipment and asked to see a driver’s license and proof of insurance.  As soon as appellee spoke, Galloway noticed that he smelled of alcohol, that his eyes were watery, and that he exhibited other symptoms of intoxication.  At that point, Galloway began to investigate appellee for the offense of DWI.  Ultimately, appellee was arrested and charged with misdemeanor DWI.  

Appellee moved to suppress any evidence the police had seized as a result of the November 23 stop.  After a hearing, the trial court granted the motion.  This appeal followed.  

We review a trial court’s ruling on a motion to suppress for an abuse of discretion.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000);  
Lemmons v. State
, 133 S.W.3d 751, 755 (Tex. App.—Fort Worth 2004, pet. ref’d).  We afford almost total deference to a trial court’s determination of historical facts that the record supports, especially when the trial court’s fact findings are based upon an evaluation of credibility and demeanor.  
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We afford the same amount of deference to the trial court’s rulings on mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor.  
Carmouche
, 10 S.W.3d at 332; 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We review de novo, however, the trial court’s application of law to the facts in determining whether reasonable suspicion supported an investigative detention.  
See Carmouche
, 10 S.W.3d at 327; 
Guzman
, 955 S.W.2d at 89; 
Lemmons
, 133 S.W.3d at 755.

An investigative “stop” by law enforcement personnel is a sufficient intrusion on an individual’s privacy to implicate the Fourth Amendment’s protections.  
United States v. Brignoni-Ponce
, 422 U.S. 873, 878, 95 S. Ct. 2574, 2579 (1975); 
Terry v. Ohio, 
392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968).  Nevertheless, an officer is generally justified in briefly detaining an individual on less than probable cause to investigate the possibility of criminal behavior.  
Terry
, 392 U.S. at 22, 88 S. Ct. at 1880; 
Woods v. State
, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997).  An investigative detention is justified when the officer possesses a reasonable suspicion; that is, the officer is able to point to specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant the detention.  
Davis v. State
, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); 
Garza v. State
, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989).  The articulable facts used by the officer must indicate that some activity out of the ordinary is occurring or has occurred, that the detainee is connected with the unusual activity, and that the unusual activity is related to a crime.  
Garza
, 771 S.W.2d at 558; 
State v. Adkins
, 829 S.W.2d 900, 901 (Tex. App.—Fort Worth 1992, pet. ref’d).

The reasonable suspicion determination is made by considering the totality of the circumstances.  
Garcia v. State
, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); 
Lemmons
, 133 S.W.3d at 756.  The facts and circumstances that provide a reasonable suspicion of criminal activity need not be criminal in nature themselves as long as they include facts that in some way would increase the likelihood of the presence or occurrence of criminal activity.  
See Crockett v. State
, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).  Under the reasonable suspicion standard, if circumstances are consistent with criminal activity, “they permit—even demand—an investigation:  the public rightfully expects a police officer to inquire into such circumstances” in the proper discharge of the officer’s duties.  
Woods
, 956 S.W.2d at 37.

In deciding whether the facts of the situation would justify an investigative detention, it is expected that an officer will draw on his experience and personal knowledge.  
Garza
, 771 S.W.2d at 558.  “[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person . . . .”  
Woods
, 956 S.W.2d at 37-38 (quoting 
United States v. Cortez
, 449 U.S. 411, 419, 101 S. Ct. 690, 695-96 (1981)).  Information given to an officer by a civilian can be used in the officer’s decision to make a stop.  
See State v. Stolte
, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.).

In this case, the trial court concluded that Galloway’s stop of appellee was based on a “mere hunch” that appellee’s vehicle “might” have been connected to the burglary rather than on specific, articulable facts that raised a reasonable suspicion as to appellee’s involvement in the crime.  Consequently, the trial court concluded that Galloway’s initial stop of appellee was unreasonable.  We disagree.

Galloway articulated several specific facts upon which he based his suspicion that appellee’s truck might have been involved in the burglary:  the burglary had just occurred, the complainants had noticed appellee’s truck drive very slowly by their residence—the scene of the crime—several times that evening, Galloway also noticed appellee drive slowly past the residence, and Galloway knew it was common for burglars to return to the crime scene if their first attempts to steal property had been successful.

Even appellee’s attorney conceded at the motion to suppress hearing that Galloway’s stop of appellee’s vehicle was proper based on these facts.  His sole complaint was that Galloway had exceeded the scope of the detention by investigating appellee for DWI after discovering that he smelled of alcohol.  Defense counsel argued:

Judge, I have no problems, as a matter of fact, up to the point that the officer stopped this vehicle.  I think that was a legal thing for the officer to do.
 . . .  [T]he people said, Well, you know, that vehicle has been driving real slowly in front of us. . . .  
May be enough to find out, Okay.  Do you have any stolen property?
 and that’s the extent of the intrusion that’s allowed.

. . . .

I maintain that only a very limited intrusion is allowed under these facts, and “odor of alcoholic beverage” is not sufficient to go forward.  
Once that was determined, who the person was, the driver, the passenger, . . . and the owners of the stolen property could see that there was nothing stolen, that all — all they should have done is just let them go.
(footnote: 1)  [Emphasis supplied.]

Based on the totality of the circumstances, we hold that Galloway reasonably suspected that some activity out of the ordinary was occurring or had occurred that justified his stop of appellee.  
See Davis,
 947 S.W.2d at 244; 
Garza,
 771 S.W.2d at 558.  While appellee’s action of driving slowly down the street was not apparently criminal in itself, when combined with the information available to Galloway, appellee’s conduct was consistent with criminal activity and demanded further investigation.  
See Woods
, 956 S.W.2d at 37.  Accordingly, the trial court erred by concluding otherwise and granting appellee’s motion to suppress.  
See Carmouche,
 10 S.W.3d at 327; 
Lemmons,
 133 S.W.3d at 755.

We sustain the State’s points, reverse the trial court’s order granting the motion to suppress, and remand the case to the trial court for further proceedings. 

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; WALKER and MCCOY, JJ.

WALKER, J. filed a dissenting opinion.

PUBLISH

DELIVERED: September 30, 2004

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-337-CR

THE STATE OF TEXAS STATE

V.

JUAN ZARATE LOPEZ APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

I respectfully dissent.  Affording almost total deference to the trial court’s determination of historical facts that are supported by the record and to the trial court’s credibility determinations, the trial court did not abuse its discretion by concluding that Officer Galloway did not possess reasonable, articulable suspicion justifying his investigatory stop of Lopez.  Accordingly, I would affirm the trial court’s order granting Lopez’s motion to suppress.

The law is well-settled that an officer’s investigative detention of a suspect based on reasonable, articulable facts that an offense has been or is being committed does not violate the Fourth Amendment as long as: (1) the officer’s action was justified at its inception; and (2) the officer’s action was reasonably related in scope to the circumstances which justified the interference in the first place.
  See Terry v. Ohio
, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879 (1968); 
Davis v. State
, 947 S.
W.2d 240, 242 (Tex. Crim. App. 1997).  Under the first prong, “the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.”  
Davis
, 947 S.W.2d at 242 (citing 
Terry
, 392 U.S. at 21, 88 S. Ct. at 1880).  The facts must be viewed together, and
 those facts that do not show reasonable suspicion in isolation may do so when combined with other facts.  
Jones v. State
, 926 S.W.2d 386, 388-89 (Tex. App.—Fort Worth 1996, pet. ref’d) (op. on reh’g).  Additionally, an officer’s experience may be considered when determining if the officer had a basis for reasonable suspicion to justify an investigative detention. 
Garza v. State
, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989).

A trial court’s granting of a motion to suppress is reviewed for an abuse of discretion.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Oles v. State
, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  Under this standard of review, we afford almost total deference to a trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based upon an evaluation of credibility and demeanor.  
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Officer Galloway responded to a burglary call relating to painting equipment taken from the back of a vehicle parked on the street in front of complainants’ residence.  Officer Galloway explained that the street running by the front of complainants’ home was a narrow asphalt road.  He explained, “It’s considered two lanes, but it’s a very small roadway.  And just directly in front of the residence is - - is a turn, a bend in the road.”  He admitted that it would not be unusual for drivers to slow in front of complainants’ residence as they approached the curve.  As Officer Galloway stood in front of complainants’ residence speaking with them about the burglary, the trio observed Lopez drive slowly down the street in front of complainants’ home.  The complainants told Officer Galloway that they had observed that same truck drive by several times earlier in the evening.
(footnote: 1)  The complainants did not see who had burglarized their property, did not identify Lopez as the burglar, and did not identify Lopez’s truck as the automobile used in the burglary.  Nonetheless, Officer Galloway decided to stop Lopez’s vehicle by running into the street and flagging him over.  When asked to explain why he detained Lopez, Officer Galloway responded,

More or less it was an investigatory detention.  We - - I was stopping them to ask them questions, where they had been that evening, pertaining to the theft to see if - - maybe if they had been involved with that.  I was trying 
to investigate the theft based on the complainants’ suspicions 
that maybe they were involved.

When we saw them, they were also driving very slowly through the neighborhood.  Of course, at that time I didn’t know that they lived there or anywhere close.  And it was just suspicious activity, I felt like, with thefts - - or a recent burglary in the area. [Emphasis added].

On redirect examination Officer Galloway testified:

Q. Do you have any experience in your - - in your training with the police academy, or whatever, whereever [sic] it may come from, with defendants returning to - - suspects, that is - - returning to the scene of a crime?

A. Well with the unit that I’m currently assigned to, a burglary unit, we find that that happens, yes, the scene of an area.  If they find particular equipment or anything that they’ve stolen, they’ll return and try to - -

Q. So you’ve found that to be common in your training?

A. Some - - yeah.  Yes, ma’am.  Some criminals have that M.O., yes, ma’am.

At the time of Lopez’s stop, Officer Galloway had been employed as a police officer by the city of Fort Worth for fifteen months. He was “vaguely familiar” with the area and had been working in that district for approximately two months. 

The majority holds that Officer Galloway’s two months’ experience in the area and fifteen months’ experience as a police officer, the fact that complainants reported that Lopez had driven by several times earlier in the evening, and Officer Galloway’s training that “some” burglars drive by a successful burglary crime scene constitute reasonable articulable facts so compelling that the trial court abused its discretion and misapplied the law by holding to the contrary.  I cannot agree.  Applying the required deferential standard of review to the record before us, the trial court could reasonably have determined that Officer Galloway stopped Lopez’s vehicle as he testified, simply to investigate 
complainants’ suspicions
, not because he possessed reasonable articulable suspicion that Lopez had committed the burglary.  Additionally, the trial court could reasonably have determined that Officer Galloway’s testimony that “some” criminals return to the crime scene was global and did not support any reasonable inference of criminal activity by Lopez.  The trial court could reasonably have determined that driving slowly down a poorly lit street while approaching a curve did not constitute activity out of the ordinary related to a crime.  In short, I do not believe that the trial court abused its discretion in holding that Officer Galloway failed to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted his stop of Lopez.  
See, e.g., Davis
, 947 S.W.2d at 242-43.  Accordingly, I would affirm the trial court’s order granting Lopez’s motion to suppress.

SUE WALKER

JUSTICE

PUBLISH

DELIVERED: September 30, 2004

FOOTNOTES
1:
Neither party challenges the trial court’s conclusion that Galloway’s request to see appellee’s license and identification did not exceed the scope of the temporary detention.  Also, neither party claims that Galloway lacked probable cause for the DWI arrest.  Therefore, we do not address these issues.

1:
Officer Galloway subsequently learned that Lopez lived in the neighborhood on a nearby street.

COMMENTS AND ANNOTATIONS
Comment 1:
Majority opinion by Judge Cayce; Dissent by Judge Walker.