**Jimmy Ferrell CUMMINGS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–10–00107–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 24, 2011.

Discretionary Review Refused
Oct. 19, 2011.

Douglas M. Durham, Houston, for Appellant.

Eric Kugler, Houston, for the State.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

Appellant Jimmy Ferrell Cummings appeals his conviction for the felony offense of driving while intoxicated, claiming the trial court committed fundamental error by failing to provide sua sponte a jury instruction under article 38.23 of the Texas Code of Criminal Procedure. This statute prohibits the admission of evidence obtained in violation of state or federal law and mandates a jury instruction when the evidence raises a material fact issue in this regard. Appellant also claims that his trial counsel provided ineffective assistance by failing to request a jury instruction under article 38.23 and by electing for the trial court, rather than the jury, to determine punishment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the offense of driving while intoxicat-

ed ("DWI"). The indictment contained two enhancement paragraphs in which the State alleged two, prior, final, felony convictions. Appellant pleaded "not guilty" to the charged offense.

At trial, the State called Officer Ricardo Cruz of the Houston Police Department to testify. Officer Cruz offered the following account of events leading to appellant's arrest:

At approximately 6:30 p.m. on August 13, 2008, Officer Cruz was in uniform and driving in his marked patrol car on the Gulf Freeway. He observed appellant in the vehicle in front of him. Both the officer and appellant turned off the freeway onto a nearby street. Appellant suddenly stopped his truck in the road, opened the driver's side door, and began to urinate on the street. Officer Cruz drove closer to appellant and saw him sitting in the driver's seat, holding his penis in his left hand as he continued to urinate. At this point, Officer Cruz moved his patrol vehicle, activated the vehicle's emergency lights, and approached appellant on foot, ordering appellant to "put his penis back in his pants and step out of the vehicle."

Appellant smelled of alcohol, had bloodshot eyes, and slurred speech. Officer Cruz immediately handcuffed appellant because appellant became verbally aggressive towards Officer Cruz. Three unopened cans of beer, still cold to the touch, were in the front of appellant's truck. Officer Cruz suspected appellant was an intoxicated driver. Both men were in a lane of traffic, so Officer Cruz placed appellant in the patrol car for the purpose of moving to a safer location to perform field-sobriety tests. During this interval, appellant continued to verbally threaten Officer Cruz, so Officer Cruz called a "DWI unit." The

DWI unit instructed Officer Cruz to bring appellant to "Central Intox," which he did.[1]

At trial, other officers also testified as to appellant's conduct on the night in question. Officer James Tippy met appellant between 7:00 p.m. and 7:15 p.m. at Central Intox. According to Officer Tippy, upon arrival, appellant appeared "confused" and smelled of alcohol. Appellant refused to consent to a breath test. Sergeant O.J. Latin administered a series of sobriety tests to appellant. Sergeant Latin testified that he performed a horizontal gaze nystagmus test, and appellant exhibited all six clues for intoxication. Sergeant Latin also administered the Rhomberg balance test, the "one leg stand" test, and the straight line test. Appellant showed signs of intoxication on all tests.

Appellant testified at trial, giving a different account of the evening's events. Appellant testified that he left work a little after 5:00 p.m., and on his way home appellant stopped at a store and bought "two single beers." Upon arriving home, appellant drank those two beers and a third beer from his refrigerator. At approximately 6:30 p.m., appellant's girlfriend called and asked him to pick her up from work. Appellant was on his way to pick up his girlfriend when he needed to use the restroom. Appellant stopped at a gas station, but the restroom was unavailable, so he got back into his truck and found a dumpster. Appellant put his truck in park, "tilt[ed] the steering wheel up and let the seat back." He then "cracked the door [open] and leaned over sideways[,] . . . and started peeing . . ." According to appellant, nobody could have seen him urinating. Appellant backed his truck up and then saw for the first time Officer Cruz, who was parked ahead of appellant. Appellant drove around Officer Cruz's patrol car and waited at a stop sign. While

---

1. No description, formal name, or location of "Central Intox" is in the record.

waiting to turn, appellant heard Officer Cruz asking, "What are you doing?" Appellant responded that he was trying to get on the adjoining road. Officer Cruz then asked appellant to exit his truck, and appellant obliged. Appellant asked Officer Cruz, "What is the problem? What is going on?" Officer Cruz ordered appellant to turn around and put his hands on the truck. Officer Cruz patted appellant down, handcuffed him, and placed him in the back of the patrol car without any explanation.

The jury found appellant guilty of the charged offense. The trial court found the enhancement paragraphs to be true and sentenced appellant to forty years' confinement. Appellant filed a motion for new trial in which he asserted ineffective assistance of counsel, and the trial court denied the motion. Appellant now challenges his conviction, raising two issues on appeal.

## Issues and Analysis

### Did the trial court err in failing to instruct the jury under article 38.23 of the Texas Code of Criminal Procedure?

■ In his first issue, appellant asserts the trial court fundamentally erred in failing to provide a jury instruction under article 38.23 of the Texas Code of Criminal Procedure.

■ A trial judge has a sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. *Oursbourn v. State,* 259 S.W.3d 159, 179 (Tex.Crim.App. 2008); *see* Tex.Code Crim. Proc. Ann. art. 36.14 (West 2007). Article 38.23(a) requires a jury instruction only if there is a genuine dispute about a material fact that is essential to deciding the lawfulness of the challenged conduct in obtaining the evidence. *See Madden v. State,* 242 S.W.3d 504, 510 (Tex.Crim.App.2007). If other facts not in

dispute are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence. *See id.*

Appellant asserts a fact issue exists concerning whether Officer Cruz observed him urinating. According to appellant, this disputed factual issue was material to the lawfulness of appellant's detention and arrest, and without the 38.23 instruction, there was no mechanism for the jury to weigh the conflict in testimony between appellant and Officer Cruz.

■ Presuming that Officer Cruz could not have observed appellant urinating, there still would be a reasonable suspicion based on specific, articulable facts that would lead an officer to the reasonable conclusion that criminal activity was underway and that a particular person was connected to the activity. *See Davis v. State,* 947 S.W.2d 240, 242 (Tex.Crim.App. 1997). Officer Cruz testified that urinating in public is a criminal offense. Even under appellant's version of the facts, though Officer Cruz may not actually have seen appellant urinating, Officer Cruz still would have seen appellant driving away from the area where he had just urinated. The facts and circumstances providing a reasonable suspicion of criminal activity need not be criminal in nature themselves as long as they include facts that, in some way, would increase the likelihood of the presence or occurrence of criminal activity. *See State v. Lopez,* 148 S.W.3d 586, 589 (Tex.App.-Fort Worth 2004, pet. ref'd). Even under the facts to which appellant testified, there would be a reasonable suspicion that some activity out of the ordinary had occurred that justified further investigation and the stop of appellant. *See Davis,* 947 S.W.2d at 244; *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App. 1989).

Under appellant's version of the facts, Officer Cruz asked appellant what he was doing, and appellant stated he was trying to get on the adjoining road. According to appellant, Officer Cruz then asked appellant to step out of the truck, and when appellant complied, he asked Officer Cruz, "What is the problem? What is going on?" Appellant did not controvert Officer Cruz's testimony that appellant had bloodshot eyes and a strong odor of alcohol that Officer Cruz detected right away. Indeed, appellant testified that he consumed three beers in the 60–90 minutes before he encountered Officer Cruz and that he felt a "buzz." Therefore, even under appellant's testimony, at this point, Officer Cruz would have had reasonable suspicion that appellant was driving while intoxicated. *See Goudeau v. State*, 209 S.W.3d 713, 719–20 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (involving an accused's bloodshot eyes and slurred speech as giving rise to the reasonable suspicion that the accused may have been driving while intoxicated).

Appellant asserts a material fact issue exists concerning whether Officer Cruz observed him urinating. Appellant disputed Officer Cruz's testimony. Appellant testified that he never used his left hand to hold his penis. Appellant testified that, "even if you were standing outside [the truck's] door, you couldn't see me." But these disputed facts are not essential to deciding the lawfulness of the challenged conduct in obtaining the evidence. *See Madden*, 242 S.W.3d at 517–18; *Mbugua v. State*, 312 S.W.3d 657, 669 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd); *Reynosa v. State*, 996 S.W.2d 238, 240 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Markey v. State*, 996 S.W.2d 226, 230–31

(Tex.App.-Houston [14th Dist.] 1999, no pet.). Therefore, the trial court did not err in failing to include in the jury charge an instruction under article 38.23(a). Accordingly, appellant's first issue is overruled.[2]

### Did appellant receive ineffective assistance of counsel?

In his second issue, appellant claims he received ineffective assistance of counsel in two respects: (1) his trial counsel did not request a jury instruction under article 38.23 and (2) his counsel elected for appellant's punishment to be assessed by the trial judge instead of the jury.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.051 (West 2005). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex.Crim.App.1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92, 104 S.Ct. 2052. Courts apply a strong presumption that trial counsel was competent and presume that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

---

2. Even if the trial court had erred, we would conclude that appellant did not suffer egregious harm.

### Standard of Review

The trial court denied appellant's motion for new trial, which was based on allegations of ineffective assistance of counsel. We will not reverse the trial court's denial of a motion for new trial absent an abuse of discretion. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex.Crim. App.2004), *superseded in part on other grounds by* TEX.R.APP. P. 21.8(b), *as recognized in State v. Herndon*, 215 S.W.3d 901, 905 n. 5 (Tex.Crim.App.2007). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *See id.* We view the evidence in the light most favorable to the trial court's ruling, deferring to its credibility determinations, and we presume all reasonable factual findings that could have been made in support of the trial court's ruling. *See id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support its ruling. *See id.*

### Failure to Request Article 38.23 Instruction

Appellant complains that he received ineffective assistance of counsel based on his trial counsel's failure to request an article 38.23 instruction. As noted, because there was no fact issue material to the lawfulness of appellant's detention and arrest, appellant was not entitled to an instruction under article 38.23. *See Hardin v. State*, 951 S.W.2d 208, 211 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (rejecting claim for ineffective assistance when trial counsel failed to request article 38.23 instruction). Appellant's trial counsel's failure to request an instruction to which appellant was not entitled is not ineffective assistance. *See id.* We conclude that the trial court did not abuse its discretion by denying appellant's motion for new trial regarding alleged ineffective assistance based on counsel's failure to request an article 38.23 instruction.

### Punishment Assessment Election

Appellant also asserts that his trial counsel was deficient in electing that the trial court, rather than the jury, assess appellant's punishment. This argument is based on a false premise because it was appellant, rather than his counsel, who made this election. Appellant's counsel arguably could have been ineffective in advising appellant regarding this election or in failing to properly execute appellant's election, but appellant's counsel could not have been ineffective in making an election that was not his to make. *See Redmond v. State*, 30 S.W.3d 692, 698 (Tex.App.-Beaumont 2000, pet. ref'd). When appellant made his election that the trial court would assess punishment, appellant had a prior felony conviction for possession of cocaine and four prior DWI convictions. In addition, while he was out of jail on bond awaiting trial for the DWI offense in the case under review, appellant was arrested and charged with a sixth DWI offense. Because appellant was a habitual felony offender, the range of punishment he would face upon conviction for his fifth DWI offense would be twenty-five years to ninety-nine years' confinement or confinement for life. *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2003).

There were various affidavits before the trial court regarding appellant's motion for new trial, but appellant did not present any testimony. There was no testimony from appellant regarding his counsel's advice as to the punishment election or as to appellant's decision as to who should assess punishment. The record does not reflect whether appellant elected to have the trial court assess punishment based on his attorney's influence or advice.

Appellant presented three affidavits from lawyers who practice criminal law and who did not represent appellant in the case under review.[3] None of these three lawyers stated that they were aware of the advice that appellant's counsel had given appellant regarding the punishment election, and these lawyers did not analyze the reasonableness of this advice. Instead, these lawyers opined that they would not have elected to have the trial court assess punishment because the visiting judge who was presiding over this case has a reputation for not being lenient in sentencing. These three lawyers also stated that, in their opinion, it would be a "strategic error" to elect to have this visiting judge assess punishment in a felony DWI case in which the client is subject to a range of punishment from twenty-five years to ninety-nine years' confinement or confinement for life. Though they disagreed with trial counsel's strategic decision and believed it was erroneous, these lawyers did not state that advising a client to elect punishment by the trial court under these circumstances would fall below an objective standard of reasonableness. Even if these lawyers had so testified, the trial court reasonably could have disbelieved the testimony of these three affiants. *See Charles,* 146 S.W.3d at 210–13; *Clarke v. State,* 305 S.W.3d 841, 848 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd).

In another affidavit, appellant's trial counsel testified that he believed the trial court's assessment of punishment at forty years' confinement was fair based on the evidence and appellant's criminal record. Counsel also testified that a major factor in the decision to have the trial court assess punishment was that, while on bond for the DWI offense in the case under review, appellant was arrested for another DWI offense. Counsel stated that he believed this extraneous offense would have had a highly prejudicial impact on a jury assessing punishment and that it would have less impact on a judge. The trial court was free to credit trial counsel's testimony in this regard. The decision as to who should assess the punishment in any criminal case is usually a matter of trial strategy. *See Ex parte Adams,* 701 S.W.2d 257, 259 (Tex.Crim.App.1985). The trial court reasonably could have concluded that appellant did not overcome the strong presumption that trial counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Thompson,* 9 S.W.3d at 813. The trial court reasonably could have concluded that counsel's representation did not fall below an objective standard of reasonableness, based on prevailing professional norms. *See Gill v. State,* 111 S.W.3d 211, 215 (Tex.App.-Texarkana 2003, no pet.). We conclude that the trial court did not abuse its discretion by denying appellant's motion for new trial as to alleged ineffective assistance regarding appellant's election that the trial court assess punishment. Accordingly, we overrule appellant's second issue.

The trial court's judgment is affirmed.

JOHN S. ANDERSON, Justice, dissenting.

The majority has concluded there was no egregious error in appellant's jury charge. I write separately today because I believe there was error in the jury charge and would reverse and remand this case for a new trial.

---

**3.** Appellant also presented two other affidavits that did not contain any testimony arguably relevant to the issue of whether his trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms.

## I. The Trial Court Erred By Not *Sua Sponte* Issuing a Jury Instruction Under Section 38.23 of the Texas Code of Criminal Procedure.

Appellant argues the trial court had a duty to *sua sponte* issue a jury instruction that evidence obtained in contravention of the U.S. or Texas constitutions may not be used against a defendant. His belief in the responsibility of the trial court is predicated on his contention there was a material factual dispute about whether Officer Cruz had reasonable suspicion to detain appellant.

### A. Standard of Review

We evaluate jury charge error under the *Almanza v. State* standard. 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We first determine whether error exists in the jury charge. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). If there is harm, we must then determine what sort of harm exists. *Almanza,* 686 S.W.2d at 171. If error was preserved, we must reverse if we conclude "some harm" occurred. *Id.* If error was not preserved, we reverse only if the defendant suffered "egregious harm." *Id.*

### B. Did the Trial Court Err by Not Issuing a Section 38.23 Jury Instruction?

There are three requirements necessary to receive a jury charge under Article 38.23: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State,* 242 S.W.3d 504, 510 (Tex.Crim.App.2007).

Officer Cruz testified he witnessed appellant urinating in public. Public urination is a crime, so if the facts are the way Officer Cruz described, he had lawful authority to detain appellant. Tex. Penal Code 42.01(a)(10) (West 2010). *See, e.g., Terry v. Ohio,* 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (permitting an officer to detain a suspect based upon reasonable suspicion a person is, has been, or will quickly be engaged in criminal activity); *Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App.2005).

Appellant, meanwhile, contends that due to his maneuvering within the passenger compartment of his truck, it was not possible for anyone to see him urinate. Appellant testified that after he had finished urinating, he resumed driving, stopping at a stop sign. At this point, appellant asserts his first encounter with Officer Cruz was when Officer Cruz approached on foot and asked appellant, "What are you doing?" Officer Cruz did not testify that he had any reason to stop appellant other than the alleged public urination. Thus, appellant has raised and contested a factual issue by presenting a different version of events from Officer Cruz, satisfying the first two requirements to receive a 38.23 jury charge. *Madden,* 242 S.W.3d at 510.

The majority states that even under appellant's version of events, Officer Cruz would still have seen appellant driving away from the place where he committed the offense. That alone would be sufficient, the majority contends, to give Officer Cruz reasonable suspicion to stop the appellant. While that may be true, Officer Cruz never made any statement about seeing the place where appellant's offense occurred. To possess reasonable suspicion, the officer must be "able to point to specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant the detention." *State v. Lopez,* 148 S.W.3d 586, 589 (Tex. App.-Fort Worth 2004, pet. ref'd). Under the record presented, Officer Cruz did not have a specific, articulable reason for stopping appellant if he did not see appellant urinate.

The third prong of the requirement to receive a section 38.23 instruction is whether the factual issue is material to the lawfulness of the conduct challenged. *Madden*, 242 S.W.3d at 510. To determine this, we must assess whether Officer Cruz's alleged actions are a seizure under the Fourth Amendment. A police officer may ask questions of citizens without implicating the Fourth Amendment if the contact is consensual and a reasonable person would feel free to determine for himself whether to engage or ignore the officer. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim.App.1997). A Fourth Amendment seizure occurs when the encounter is no longer consensual—when a reasonable person would not feel free to disregard the officer. *Florida v. Bostick*, 501 U.S. at 434, 111 S.Ct. 2382; *Hunter*, 955 S.W.2d at 104. We examine the totality of the circumstances to determine whether a reasonable person would have felt free to disregard the officer and continue with his business. *Florida v. Bostick*, 501 U.S. at 437, 111 S.Ct. 2382; *Hunter* 955 S.W.2d at 104.

Assuming appellant's version of events is true, appellant saw Officer Cruz's patrol car on the street. He went around the patrol car and was stopped at a stop sign when a uniformed officer walked up to the driver's side door of his truck and asked, "What are you doing?" Drivers are instructed to obey police while in traffic, so a police officer approaching a car at a stop sign does signal a law enforcement show of authority that a normal citizen would not provoke. *See* Tex. Transp. Code Ann. 544.004 (West 2010) (stating that a driver must comply with traffic signals unless "otherwise directed by a traffic or police officer.") I conclude a reasonable person in appellant's position, under the totality of the circumstances, would not have felt free

to disregard Officer Cruz. Thus, Officer Cruz required reasonable suspicion or probable cause to pursue contact with the appellant.

Officer Cruz testified that appellant smelled of alcohol, had bloodshot eyes, and slurred his speech. However, Officer Cruz did not testify he knew any of this before engaging in a conversation with the appellant. Thus, if Officer Cruz did not see the alleged public urination, Officer Cruz did not have reasonable suspicion to detain appellant because the conversation began after the seizure had occurred. If Officer Cruz did not have reasonable suspicion to stop appellant, then all other evidence of the DWI was illegally obtained. *See Ford*, 158 S.W.3d at 493–94 (concluding a motion to suppress evidence of marijuana use should have been granted because the police officer did not have reasonable suspicion to stop the defendant's car). The lawfulness of Officer Cruz's stop is material to the lawfulness of the collection of the DWI evidence.

As a result, I am convinced appellant has met the three conditions necessary to receive a section 38.23 jury instruction. For that reason, I respectfully dissent from the majority because I conclude the trial court committed error by failing to *sua sponte* provide the jury instruction. *Madden v. State*, 242 S.W.3d at 510.

**C. Did the Failure of the Trial Court to Issue the Section 38.23 Result in Egregious Harm to the Appellant?**

We determine harm based on the entire jury charge, the state of the evidence, counsel's arguments, and any other relevant information in the record. *Olivas v. State*, 202 S.W.3d 137, 146 (Tex.Crim.App. 2006). Egregious harm to a defendant occurs when one of three conditions are met: (1) the error affects the very basis of the case; (2) deprives the defendant of a

valuable right; or (3) vitally affects a defensive theory. *Id.*

### 1. Was there Harm to Appellant?

After examining the jury charge, I conclude there was no instruction to the jury regarding a possible violation of appellant's right to be free of illegal searches and seizures, or what the jury should do if they believed appellant was unlawfully detained. *See* U.S. CONST. amend. IV. Instead, the instructions inform the jury appellant should be found guilty if the evidence shows beyond a reasonable doubt that appellant "operate[d] a motor vehicle in a public place while intoxicated." All evidence of DWI, however, was obtained after the point of an alleged illegal search and seizure by Officer Cruz. I also note neither party nor the trial court chose to raise any fourth amendment concerns at trial, so there was nothing for the jury to consider.

As a result, the jury could have believed the search was improper but were not instructed what to do in that event. Jurors were only instructed that if they believed the evidence, which appellant now contends was illegally obtained, showed appellant was driving while intoxicated, they should convict. We conclude this lack of instruction did harm appellant.

### 2. Was the Harm Egregious?

Conviction on the basis of illegally obtained evidence deprives appellant of a valuable right. *See Olivas,* 202 S.W.3d at 146. Specifically, appellant has the right to be free of searches and seizures that occur without law enforcement having either reasonable suspicion or probable cause. *See* U.S. CONST. amend. IV; Tex. Code Crim. Proc. Art. 38.23(a). I believe appellant has met all three prongs of the *Madden* test for requiring a 38.23 jury charge instruction, and a possible illegal search and seizure deprives appellant of a valuable and constitutionally protected right. Thus, I conclude the failure of the trial court to *sua sponte* provide a jury instruction requiring the jury to find the appellant not guilty if it concluded that the evidence of the DWI was illegally obtained is egregious error. I would reverse and remand the case for a new trial for the reasons stated above.

I would reverse and remand the case based upon the jury charge error point. As a result, I express no opinions about appellant's claims of ineffective assistance of trial counsel. *See* Tex.R.App. P. 47.1.