**Opinion filed May 30, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00311-CR
_____

## JUAN CHRISTOPHER LARA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 13289**

### M E M O R A N D U M   O P I N I O N

Appellant, Juan Christopher Lara, was charged by indictment with aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West Supp. 2023). A jury found him guilty and assessed his punishment at twelve years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced him accordingly.

Appellant raises three issues on appeal. First, he claims to have received ineffective assistance of counsel due to the failure of his trial counsel to adequately impeach key witnesses. Second, he contends that his trial counsel was ineffective because he failed to object to the State's closing argument. Third, he contends that the trial court abused its discretion when it denied his motion for new trial "despite the evidence of ineffective assistance presented at the new trial hearing." We affirm.

*Factual and Procedural History*

The jury convicted Appellant of committing aggravated assault by threatening a tenant, Marcus Villarreal, at gunpoint in June 2020 to compel him to leave Appellant's guesthouse. Villarreal had been permitted to live in Appellant's guesthouse for five or six months on the condition that he would help "fix it up."[1] Villarreal lived in the guesthouse with his girlfriend, Misty Dawn Merket, and her two children.

Prior to the aggravated assault, tension had developed between Appellant and Villarreal regarding the living arrangement. Villarreal denied that Appellant had told him to leave the property, but Merket testified to the contrary. She testified that Villarreal would steal from both her and Appellant, which played a large part in Appellant demanding that Villarreal leave the premises. According to Merket, Appellant had told Villarreal to leave the guesthouse "a lot of times." Villarreal would routinely return and then Appellant would "feel sorry for him" and permit him to stay at the guesthouse again. But Merket testified that, at the time of this incident, "[Appellant] didn't want [Villarreal] on the property at all."

The assault took place around midnight on June 3, 2020. Villarreal and Merket were in the guesthouse when Appellant came in, pointed a gun at Villarreal,

---

[1] Before living in the guesthouse, Villarreal lived in Appellant's home for two or three years.

and demanded that he leave. Villarreal testified that he feared for his safety. Villareal left the guesthouse, drove to a nearby convenience store, and called the Sweetwater Police Department. Officer Clint Allen, with the Sweetwater Police Department, met Villarreal at the convenience store and talked with him there. Afterwards, Officer Allen escorted Villarreal back to the guesthouse and talked with Merket. Officer Allen took an oral statement and then a written statement from Villarreal, and he obtained an oral statement from Merket. Officer Allen testified that he attempted to speak with Appellant, but Appellant told an "unknow male subject" "to tell officers that he was sleeping and he couldn't come outside and talk with [them]."

Villarreal's and Merket's versions of events varied in certain details when each recounted the incident in their statements and testimony. In this regard, Villareal and Merket each recounted the event three times. Villarreal provided an oral statement to Officer Allen just after the offense, provided a written statement, and testified at trial. Merket provided an oral statement to Officer Allen just after the offense, wrote a "recantation letter" for Appellant that was dated August 24, 2020, and testified at trial.

Each of Villarreal's and Merket's accounts of the assault had discrepancies. Villarreal's accounts of the incident place him in different locations when Appellant points the gun at him. Officer Allen recounted that, in Villareal's oral statement, Villarreal stated that he was sitting on the couch when Appellant entered and "pointed the gun at his face." In Villareal's written statement, Appellant confronted Villarreal while he was talking to Merket in the bedroom. At trial, Villarreal testified that he was "sitting in the doorway, which is in the middle of the house, talking to

[Merket]" when Appellant came in and "put [the gun] to my head and told me to get out."

Merket's accounts differed on whether she saw Appellant with a gun. According to Officer Allen's report, Merket stated in her oral statement that she was in the bedroom when the confrontation between Appellant and Villareal occurred, and that she "heard what appeared to be a gun being loaded." She then stated that she "saw something in [Appellant's] hand that could have been a gun." At trial, Officer Allen recounted that, in Merket's oral statement, she said that "she heard something [but] she couldn't say exactly what it was, but something to [the] effect [of a gun being loaded]." Officer Allen testified that "[Merket] saw [Appellant] holding something but didn't say a gun per se." At trial, Merket testified unequivocally that she saw Appellant threaten Villareal with a gun by "put[ting] the gun to [Villarreal's] head, and [telling] [Villarreal] that [Appellant] had told him to stay off his property."

However, in the recantation letter, Merket wrote that she "did not see [Appellant] with a gun of any kind" that night and that "there was never any confrontation or fighting while words were being exchanged." Outside of the presence of the jury, the State questioned Merket about her statement. Merket testified that Appellant approached her and asked her "[t]o write a statement and leave the gun out." Merket testified that she gave that "statement" because Appellant was supplying her with methamphetamines and, if she did not write it, "then [she] wouldn't have anybody to buy what [she] needed." Appellant's trial counsel did not question Merket regarding the recantation letter and advised the trial court that Merket would not be cross-examined about or shown "that statement." Instead, trial counsel stated that he intended to cross-examine Merket regarding inconsistencies

4

in her testimony and her oral statement to Officer Allen. At the end of a bench conference, the trial court ruled that the State's questions on the statement would be limited to those that involved her recantation, but advised the attorneys that they were not "going [to go] into, as best we can, why . . . [Merket] may have changed the statement to omit the gun in reference to any drug supply dealing, or anything like that, [because] I don't want to go there if [trial counsel does not] open the door."

At trial, Appellant's trial counsel sought to impeach Villarreal's and Merket's credibility through their inconsistent statements. In his opening statement, trial counsel told the jury, "I expect the evidence to show that there's some pretty material inconsistencies in [Merket's] testimony and [Villarreal's] testimony and what they told the investigating officer." Appellant's trial counsel cross-examined Villareal about his inconsistent statements, questioned Officer Allen about Villareal's inconsistent statements, and admitted Villarreal's written statement into evidence. In addition, trial counsel questioned Officer Allen about Merket's inconsistent statements, and trial counsel attempted to question Merket regarding her oral statement to Officer Allen but Merket did not recall "what [her] answers were" to Officer Allen's questions.

Following trial, Appellant filed a motion for new trial that alleged ineffective assistance of counsel. The motion alleged in part that Villarreal and Merket were not adequately impeached by trial counsel.[2] The trial court held a hearing on the motion. At the hearing, Appellant's trial counsel testified regarding his decision not to offer Merket's recantation letter into evidence. Trial counsel explained that he did not pursue Merket's letter principally because her motive behind the recantation

---

[2]The motion for new trial raised additional claims of ineffective assistance that are not raised on appeal.

stemmed from Appellant "threaten[ing] to cut off her drug supply" and he did not want to open the door to the admission of evidence that Appellant had dealt drugs, which he deemed to be more of a liability to Appellant's credibility than to Merket's. After the hearing, the trial court denied Appellant's motion for new trial.

*Standard of Review*

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that: (1) his trial counsel rendered deficient performance in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023). "Failure to succeed on either prong is fatal to the ineffectiveness claim." *Lane*, 670 S.W.3d at 671.

An attorney is deficient if his performance falls below an objective standard of reasonableness under the prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation. *Id.* (citing *Strickland*, 466 U.S. at 687–88, 690). "There is 'a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 689).

"Claims of ineffective assistance must be firmly rooted in the record." *Id.* at 782. "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)). Counsel's actions are deficient only if

the reviewing court finds that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

With regard to the second prong, Appellant must show that trial counsel's deficient performance prejudiced his defense; in other words, there is a reasonable probability that the result of his trial would have been different but for trial counsel's errors. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. Both prongs of the *Strickland* test are judged by the totality of the circumstances as they existed at trial, not through 20/20 hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990) ("The [Strickland] test is to be applied at the time of trial, not through hindsight.").

*Analysis*

I. *Villarreal's Testimony*

In Appellant's first issue, he argues that his trial counsel was ineffective for failing to adequately impeach Villarreal and Merket regarding inconsistent statements that they made about the offense. We address Appellant's first issue as it relates to Villarreal. Because Merket's testimony was addressed at the hearing on the motion for new trial, we address her testimony in Appellant's third issue.

"Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) (citing *Coble v. State*, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973)). "Furthermore, cross-examination is an art, not a science, and it cannot be adequately judged in hindsight."

*Id.* "If ineffective, cross-examination can serve to bolster the credibility of the witness and underscore the very points that are sought to be impeached." *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

The cross-examination of Villarreal appears to stem from a planned trial strategy. Appellant's trial counsel anticipated inconsistencies in Villarreal's statements and alerted the jury to such. Trial counsel highlighted Villareal's inconsistencies during his cross-examination—he confronted Villarreal about his inconsistent testimony concerning the gun and about Merket's location at the time of the offense.

> Q. Okay. Do you recall telling the officer that [Merket] was in the -- was in a different room and you don't know if she saw? Do you recall telling the officer that?
>
> A. No.
>
> . . . .
>
> Q. Okay. Are you familiar with guns?
>
> A. A little bit.
>
> Q. Okay. Do you know what kind of gun this was?
>
> A. I already answered that question. No.
>
> Q. Okay. Did you -- so would it surprise you if the cop testifies that you told him that it was possibly a Taurus gun? Do you recall telling him that?
>
> A. No. I mean, I was pretty scared at the time. I probably did say it was that.

Further, during his cross-examination of Officer Allen, Appellant's trial counsel highlighted inconsistencies between Villarreal's initial statement and his testimony at trial.

> Q. Did -- did [Villarreal] tell you that just recently, prior to 6-2-2020, that [Appellant] decided he wanted Villarreal and Merket to leave?
>
> A. Yes, sir.
>
> Q. And so if [Villarreal] testified that -- that this incident was the first he -- he knew [Appellant] wanted him to leave, that would not be consistent with what he told you, correct?
>
> A. I would assume that on the 2nd would have been the first time that he had heard about it, and then the 3rd would be the second time that he heard about it.
>
> Q. Okay. And if [Villarreal] indicated that -- that [Merket] was with him at the time that [Appellant] pointed the gun at him, that would not be consistent with what he told you, correct, that she was right there with him?
>
> A. My recollection is she was in the back room when this happened.

In addition to these specific areas of impeachment, Appellant's trial counsel also offered, and the trial court admitted, Villarreal's written statement into evidence.

On appeal, Appellant argues that trial counsel "elicited some, but not all of [Villareal's] inconsistencies." Appellant argues that trial counsel did not "press" Officer Allen about Villarreal's initial statement and did not submit Officer Allen's incident report, which contained statements contradicting Villarreal's trial testimony regarding his knowledge that Appellant wanted Villarreal out of the house before the offense occurred. Appellant's trial counsel's actions fell within the wide range of reasonable and professional assistance. Even if trial counsel limited his cross-

9

examination of Villareal on his inconsistent statements, which we do not find that he did, the decision to avoid or limit cross-examination is "often the result of wisdom acquired by experience in the combat of trial." *McFarland*, 163 S.W.3d at 756. Trial counsel's cross-examination of Villarreal and Officer Allen on Villareal's statements appears to have followed a calculated and sound trial strategy, and nothing in the record overcomes the strong presumption of counsel's effective professional assistance.

II. *Jury Argument*

In Appellant's second issue, he argues that his trial counsel rendered ineffective assistance because he failed to object during the State's closing argument in the punishment phase of trial, an argument that he claims was "designed to induce the jury to assess maximum punishment." Appellant contends that the State's references to the community improperly suggested that the community wanted a particular punishment.[3]

To succeed with an ineffective-assistance-of-counsel claim based on counsel's failure to object to improper jury argument, Appellant "must show that the trial judge would have committed error in overruling such objection." *Ex parte Parra*, 420 S.W.3d 821, 824–25 (Tex. Crim. App. 2013) (quoting *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011)).

Proper jury argument "falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement." *Freeman v. State*, 340 S.W.3d

---

[3]In his brief, Appellant incorrectly contends that the State sought the maximum punishment. The State requested the "maximum" only if the jury decided probation was appropriate. The State argued that an appropriate sentence would be "somewhere between 12 and 15 years."

717, 727 (Tex. Crim. App. 2011). When reviewing alleged error concerning improper jury argument, the appellate court must analyze the statement in light of the entire argument. *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

It is improper for the prosecutor to tell the jury that the people of the community where the crime was committed desire a particular punishment. *Cortez v. State*, 683 S.W.2d 419, 420–21 (Tex. Crim. App. 1984). "An argument by the State is improper if it induces the jury to reach a particular verdict based upon the demands, desires, or expectations of the community." *Alvarez v. State*, No. 11-14-00294-CR, 2016 WL 6998986, at *4 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984)). "On the other hand, an argument constitutes a proper plea for law enforcement if it urges the jury to be the voice of the community, rather than asking the jury to lend its ear to the community." *Id.*

In the State's closing argument, the State referenced Nolan County as a community multiple times when it argued that the jury should consider several factors during its assessment of Appellant's punishment:

> The community. And I want you to think about this because a lot of people think about Nolan County as the community, right? And I've had people come up and say, oh, you don't hear -- in the newspaper, if someone issues a maximum sentence, you don't hear about it, right? I want y'all to talk about the community of people like [Appellant], okay? Because what ends up happening when a sentence is issued is it sends shock waves through the jail and through that community because those people do talk, okay? Those people know when you pull a gun and you point it at someone and you go to Nolan County jurors, this is what you get. And that's -- that's the community y'all to want consider, right?

However, you can consider Nolan County. You can consider what type of charge or what type of sentence that people in Nolan County, based on the facts of this case, an aggravated assault with a deadly weapon and a gun is involved, what people in Nolan County would want from that sentence, right? What do y'all want? What is appropriate in that case?

The State made no reference to a particular punishment in conjunction with the community, and it did not claim that the community demanded any particular punishment. *See Cortez*, 683 S.W.2d at 420–21. Instead, the State made a proper plea for law enforcement by asking that the jury "send a message." *See Muskin v. State*, No. 11-19-00391-CR, 2021 WL 5934688, at *4 (Tex. App.—Eastland Dec. 16, 2021, pet. ref'd) (mem. op., not designated for publication). And while, during its final closing argument, the State argued that it thought the appropriate sentence would be "I think somewhere between 12 and 15 years," the State did not attribute this particular punishment to the expectations of the community.

These statements can reasonably be understood, in the context of the whole argument, as a call to be the voice of the community. As a result, the State's closing argument as it relates to the community was not improper. Thus, the trial court would not have erred in overruling an objection to such argument, and Appellant's trial counsel's failure to object to the argument did not amount to ineffective assistance of counsel. We overrule Appellant's second issue.

III. *Motion for New Trial*

In Appellant's third issue, he argues that the trial court erred when it denied his motion for a new trial "despite the evidence of ineffective assistance presented at the new trial hearing." Appellant contends that the trial court's credibility determination of Merket and its finding that Appellant had not met his burden to

prove that trial counsel rendered ineffective assistance were outside the zone of reasonable disagreement.

Appellant's argument focuses on Merket's statements and credibility. Because the issues are interrelated and focus on trial counsel's effectiveness as it relates to Merket, we analyze the remainder of Appellant's first issue, ineffective assistance of counsel regarding Merket, and his third issue, the trial court's denial of Appellant's motion for new trial, together.

"When, as here, ineffective assistance claims are raised in a motion for new trial, rejected by the trial court, and reasserted on appeal, we 'analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial.'" *Minassian v. State*, 490 S.W.3d 629, 641 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). "We will not reverse the trial court's denial of a motion for new trial absent an abuse of discretion." *Cummings v. State*, 401 S.W.3d 127, 132 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by* Tex. R. App. P. 21.8(b), *as recognized in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007)). "We view the evidence in the light most favorable to the trial court's ruling, deferring to its credibility determinations, and we presume all reasonable factual findings that could have been made in support of the trial court's ruling." *Id.* Indeed, we will only find that the trial court abused its discretion if "no reasonable view of the record could support its ruling." *Id.*

As discussed above, Merket's statements conflicted about whether Appellant brandished a gun during the offense. Appellant focuses on Merket's inconsistent

statements as they relate to whether she saw Appellant with a gun and her reasoning for writing the recantation letter.

Outside of the presence of the jury, the State questioned Merket about her statements. After Merket's testimony regarding the recantation in the letter and her motivations for writing the letter, Appellant's trial counsel advised the trial court that Merket would not be cross-examined about or shown her statement in the recantation letter. At the end of a bench conference, the trial court restricted the State's questions on the statement to those that involved Merket's recantation, but advised the attorneys that they were not to explore her motivations for changing her statement to omit the gun or get into Appellant's alleged drug dealing without approaching or without trial counsel "open[ing] the door" to that information. Appellant's trial counsel then refrained from directly questioning Merket about her letter. Instead, he addressed her inconsistent oral statement through Officer Allen and attempted to do the same with Merket.

At the hearing on Appellant's motion for new trial, Merket testified about her letter in greater detail. Merket testified that she wrote the letter without any urging from Appellant, and she stated "[m]y motives were not right when I wrote that letter and I was under the influence of drugs as well."[4] Merket clarified that she wrote the letter because Appellant supplied her with drugs, and she was worried that if she did not "back him on it," then Appellant would stop supplying her drugs.

Appellant's trial counsel testified about his reasons for not questioning Merket about the letter at trial, as well as Merket's oral statement:

---

[4]As we have said, Merket offered a different reason at trial for writing the letter. Outside the presence of the jury, she stated that Appellant asked her to write her account of the offense, but to say that no gun was involved.

Q. Why didn't you introduce that letter at trial?

A. We took it up outside the presence of the jury and His Honor indicated that he was apt to allow [Merket] to testify that her motive behind the recantation was that -- was that [Appellant] threatened to cut off her drug supply, and so I reasoned that -- I reasoned that impeaching her through the cop who had already, you know, recorded statements from her inconsistent with her trial testimony, I figured that was a safe way to impeach her without getting into all that.

. . . .

Q. Okay. And then when [Merket] testified that she didn't remember what she said to the police, you did not offer that statement to refresh her memory.

A. I didn't. I didn't for that. You know, again, I didn't want to get into their alleged -- his -- and her allegations about him allegedly dealing drugs to her, and beyond that -- beyond that, she -- Mr. -- let's see. I didn't want to get into that, and I also, given that they were paramours at the time and given that the recantation didn't state the basis for the recantation, I just deemed it more of a liability to our credibility than to [Merket's].

The impeachment decisions made by Appellant's trial counsel are presumed to be the result of a reasonable trial strategy and professional assistance exercised to avoid what otherwise might have been harmful consequences to Appellant's defense. *See Hart*, 667 S.W.3d at 781.

The testimony at trial and at the motion-for-new-trial hearing do not overcome the presumption that trial counsel provided reasonable professional assistance. Trial counsel approached Merket's impeachment with a sound strategy to avoid her revealing harmful evidence—that Appellant was a drug dealer and a supplier of Merket.

15

Appellant contends that this evidence was already in the record, so the "damage was done" and therefore trial counsel "could have introduced the letter [at that point] because the motivation for the recantation was known to the jury." On this issue, Appellant's trial counsel recalled Merket as a witness during Appellant's case-in-chief. During the State's questioning, it asked Merket whether it would be "fair to say" that she had "strong feelings" for Appellant. In response, the following exchange occurred:

> A. [Appellant] was my supplier. Now I'm kind of getting --
>
> [DEFENSE COUNSEL]: I'm going to object, Your Honor, as nonresponsive.
>
> [THE STATE]: Your Honor, may we approach?
>
> THE WITNESS: I'm just trying to be honest though.
>
> THE COURT: Counsel, approach, please.
>
> (At the bench off the record.)
>
> THE COURT: Objection is sustained. Listen to the question and answer the question.
>
> [DEFENSE COUNSEL]: I would ask for an instruction to disregard.
>
> THE COURT: Ladies and gentlemen, as to the last statements of the witness, you'll disregard that.

Contrary to Appellant's assertion, the "damage" was not "done" with regards to this evidence. Trial counsel appropriately objected and asked the trial court for an instruction to disregard, which the trial court provided. Had he subsequently questioned Merket regarding the letter and her motivations for writing the letter,

16

Appellant's alleged drug dealing—a fact that trial counsel did not wish to call attention to—would have been disclosed to the jury.

As we have said, counsel's actions are deficient only if the reviewing court finds that "'no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning.'" *Hart*, 667 S.W.3d at 782 (quoting *Lopez*, 343 S.W.3d at 143). Reiterating that cross-examination is a difficult endeavor that cannot be adequately judged in hindsight, we decline to hold that no reasonable trial strategy could justify defense counsel's decision to avoid cross-examining Merket using her letter, and instead, impeaching her through Officer Allen. And even though Appellant contends, with 20/20 hindsight, that trial counsel could have impeached Merket and Villarreal differently, trial counsel's impeachment strategy was not objectively unreasonable. As we have noted, cross-examination is risky, and often the result of wisdom acquired by experience in the heat of trial. We must presume that trial counsel's decision to limit cross-examination as to both Merket and Villarreal was based on reasonable trial strategy. Nothing in the record overcomes this presumption.

The trial court denied Appellant's motion for new trial, articulating its reasons on the record.

> THE COURT: Okay. Well, when you come to a question of ineffective assistance of counsel, there's -- there's also an element of Monday-morning quarterbacking. You didn't get the results that -- that you wanted, and so you obviously are trying to think what could have been done differently? And I guess you could always say, with these results that [Appellant] does not agree with, that more effective representation could have been had, but that doesn't point that the representation that was presented was ineffective.
>
> There were viable trial strategies that were presented and reasons for that, and even [Dunbar] sees some shortcomings that he thinks he

could have done better or different, but based on the credibility and demeanor of the witnesses at the trial that I observed and today, I cannot say that this evidence, which was known at the time of trial, would probably -- is probably true or probably bring about a different result in the trial. Therefore, the Defense has not met its burden of proof for a Motion for New Trial ineffective assistance, and the Defendant's Motion for New Trial is overruled and denied.

Defense counsel's performance was not deficient. Therefore, the trial court did not abuse its discretion when it denied the motion for new trial. We overrule Appellant's first and third issues.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


May 30, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.