**Opinion issued August 26, 2021**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-19-00909-CR

—————————————

**IRBY GILES ALLISON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Case No. 2019R-0088**

---

## MEMORANDUM OPINION

Following a traffic stop, appellant Irby Giles Allison was charged with driving while intoxicated. A jury found Allison guilty of the offense, enhanced by a prior conviction for intoxication manslaughter, and sentenced him to 12 years' confinement. *See* TEX. PENAL CODE §§ 49.04, 49.09. In three issues on appeal,

Allison contends: (1) the trial court abused its discretion by denying his motion to suppress evidence obtained as a result of the illegal traffic stop; (2) he was egregiously harmed by the trial court's failure to sua sponte give a jury charge instruction under Article 38.23(a) of the Code of Criminal Procedure; and (3) he received ineffective assistance based on his trial counsel's failure to request an Article 38.23(a) instruction.

We affirm.

## Background

While on routine patrol around 1:15 a.m. on October 8, 2017, Texas Department of Public Safety Trooper L. Gabler saw a vehicle driven by Allison fail to maintain its lane by drifting across the roadway's center stripe and fog line. Gabler signaled for Allison to pull over and, after noticing a "strong" odor of alcohol coming from the vehicle, ordered Allison to step out of the vehicle. Allison had bloodshot eyes, slurred speech, and an odor of alcohol. He told Gabler he had consumed three alcoholic beverages in a four-hour period. Gabler conducted a series of field sobriety tests, determined Allison was intoxicated, and arrested Allison. Gabler also obtained a warrant for a blood sample after Allison refused consent. Testing of the sample indicated that Allison's blood alcohol concentration at the time of the traffic stop was between 0.19 and 0.25. Allison was indicted for the felony offense of driving while intoxicated with a previous conviction for intoxication manslaughter.

*Pretrial suppression hearing*

Before trial, Allison moved to suppress all evidence obtained in connection with the traffic stop. Gabler testified at the suppression hearing that he stopped Allison because Allison committed a traffic violation by crossing the center stripe twice. As described by Gabler, Allison's vehicle drifted "over and across the white [fog] line, and then regain[ed] control and cross[ed] the center striped yellow line, and regain[ed] control," before repeating the sequence again.

The dashcam video from Gabler's patrol vehicle was played for the trial court. Allison argued that Gabler did not have reasonable suspicion to initiate the traffic stop because the dashcam video showed that Allison's vehicle did not cross the center stripe. In response to several questions on cross-examination, Gabler identified instances in the video where Allison crossed the center line: "There. Slightly after"; "There. Slightly back"; "Slightly reversed, if you can get it. It was like the second before that where he crossed it."[1] Gabler explained that the moment Allison's tire crossed the center stripe was a "brief action," "not like [Allison] is staying across the center line or the fog line for a couple of seconds," and that it was difficult to see "off this low[-]quality video" and "at this distance."

---

[1] The record suggests there was some difficulty in stopping, starting, and replaying the dashcam video at the suppression hearing. According to the State, "the video had a technical problem that prevented the scrub bar from moving accurately and each time it was moved, it displayed an inaccurate time stamp." The problem was resolved before the dashcam video was played for the jury at trial.

After hearing Gabler's testimony and viewing the dashcam video, the trial court denied Allison's motion to suppress. The trial court stated:

> All right. The video obviously isn't the greatest quality but it does show some amount of swerving, at least up to, if not across the fog line and centerline. The officer's testimony says that he did. I believe it [is] for the jury to observe the video, listen to the testimony from the officer, and make a decision based on the evidence that will come in during the course of the trial. So the motion to suppress on that issue is denied.

***Trial proceedings***

The case proceeded to trial, with Gabler again testifying about the circumstances of the traffic stop and the resulting arrest. Gabler told the jury he activated his overhead emergency lights and signaled to Allison to pull over after seeing Allison's vehicle "drift from the center of the road to the right, across the white [fog] line, saw him regain control, drift to the left, cross the center yellow line, regain control, go back to the middle[,] and repeat the sequence again." The State also played the dashcam video for the jury.

On cross-examination, Allison's trial counsel asked Gabler to identify where the dashcam video showed Allison cross the white fog line and the yellow center stripe. Gabler responded that it was difficult to see the details of Allison's vehicle on the video, stating at times during cross-examination that it was "hard for [him] to tell at this distance" or that he could not "distinguish it with this video." He explained:

4

So same concept as looking down a hallway. As it goes, as the distance increases, the walls are gonna come in. So your lanes, there too, are also going to appear more narrow at a distance. Unfortunately, a video camera does not give the same replication as a set of eyes.

But, referencing the video, he indicated the traffic violations occurred at points "[t]here"; "[s]lightly before now"; "[t]here and maybe about a second reverse"; and "right before I turned on the lights."

Following the presentation of additional evidence concerning Allison's field sobriety testing, blood draw, and blood alcohol concentration, the parties rested. The trial court submitted the case to the jury. Allison's trial counsel did not request that the jury charge include an instruction on illegally obtained evidence under Article 38.23 of the Code of Criminal Procedure, and the trial court did not give one sua sponte. The jury found Allison guilty of the felony offense of driving while intoxicated with a previous conviction for manslaughter, as alleged in the indictment.

**Motion to Suppress**

In his first issue, Allison contends the trial court abused its discretion by denying his pretrial motion to suppress "all evidence of intoxication." Allison argues that the dashcam video indisputably showed that he did not cross the center stripe, and therefore Gabler did not have reasonable suspicion for the traffic stop.

## A. Standard of Review and Governing Law

"When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018); *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). A police officer's decision to stop an automobile passes Fourth Amendment scrutiny when the officer has reasonable suspicion to believe that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Castro*, 227 S.W.3d at 741. Reasonable suspicion exists when, based on the totality of the circumstances, an officer has specific articulable facts which lead the officer to conclude that the person is, has been, or soon will be engaged in criminal activity. *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). "The legality of a traffic stop based on reasonable suspicion does not depend upon a showing that an actual offense was committed; it is sufficient to show that the officer reasonably believed that an offense was in progress." *State v. Torrez*, 490 S.W.3d 279, 283 (Tex. App.—Fort Worth 2016, pet. ref'd).

Under this standard, an officer may lawfully stop and detain a person for a traffic violation that the officer witnesses. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (adopting rule that, "[a]s long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person for that

6

violation" and holding that police officers' stop and detention of defendant for stop sign violation committed in their presence was reasonable); *State v. Prieto*, No. 08-12-00268-CR, 2018 WL 447123, at \*3 (Tex. App.—El Paso Jan. 17, 2018, no pet.) (not designated for publication) (appellant's failure to signal justified initial stop that led to finding contraband in vehicle); *see also* TEX. CODE CRIM. PROC. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX. TRANSP. CODE § 543.001 ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."). Relevant here, unless certain conditions exist,[2] a driver "on a roadway of sufficient width shall drive on the right half of the roadway." TEX. TRANSP. CODE § 545.051(a). And as we noted above, "[i]f an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd).

A trial court's ruling on a motion to suppress evidence is reviewed for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

---

[2] Section 545.051(a) requires a driver to drive on the right side of the road unless: "(1) the [driver] is passing another vehicle; (2) an obstruction necessitates moving the vehicle left of the center of the roadway . . . ; (3) the [driver] is on a roadway divided into three marked lanes for traffic; or (4) the [driver] is on a roadway restricted to one-way traffic." TEX. TRANSP. CODE § 545.051(a). None of these conditions were present in this case.

In reviewing the trial court's ruling on a motion to suppress and its determination of the reasonableness of a traffic stop, we use a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We must give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "That same deferential standard of review 'applies to a trial court's determination of historical facts even when that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013) (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)); *see State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.) (reviewing court should give almost total deference to trial court's factual determinations unless video recording indisputably contradicts those findings). "But when evidence is conclusive, such as . . . 'indisputable visual evidence,' then any trial-court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling." *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) (quoting *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring)).

We afford the same level of deference to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Montanez*, 195 S.W.3d at 106 (citing *Guzman*, 955 S.W.2d at 89). We review de novo "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Id.* (citing *Guzman*, 955 S.W.2d at 89). "Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *see Duran*, 396 S.W.3d at 570 (trial court's application of search-and-seizure law is reviewed de novo). We will uphold the trial court's ruling under any applicable theory of law. *See Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019).

## B.    Analysis

The articulable fact that Gabler identified as the basis for the traffic stop was the traffic violation he claimed to have witnessed when Allison crossed the center stripe. If, contrary to Gabler's testimony, the violation did not occur, then Gabler would have had no more than a hunch or suspicion that criminal activity was occurring, making the traffic stop unlawful. *See Terry*, 392 U.S. at 30; *Castro*, 227 S.W.3d at 741. According to Allison, the video from Gabler's dashcam provided indisputable evidence that he did not cross the center stripe, and thus the trial court's denial of his motion to suppress should be disregarded as unsupported by the record.

In support of his contention, Allison cites two cases in which the Court of Criminal Appeals disregarded trial court findings that were contradicted by video recordings. *See Miller*, 393 S.W.3d at 265; *Carmouche v. State*, 10 S.W.3d 323, 332–33 (Tex. Crim. App. 2000). In *Carmouche*, the Court held the video recording did not support the trial court's implied finding that the appellant gave "free and voluntary" consent to search by throwing up his hands, responding "All right" to a search request, and then turning around to place his hands on his car. *See* 10 S.W.3d at 331–32. The Court explained:

> [T]he videotape belies [the officer's] testimony that appellant raised his hands and turned around in response to [the officer's] request to search. The tape does not support a conclusion that appellant made these gestures as an indication of consent. Indeed, appellant turned around and assumed a position to facilitate the search after he was ordered to do so by one of the officers. [The officer's] "request" came after officers had appellant spread-eagled beside his car.

*Id.* at 332. The Court declined to give almost total deference to the trial court's implicit finding on consent, holding instead that the record could not support a finding of consent when the video presented "indisputable visual evidence contradicting essential portions of [the officer's] testimony." *Id.* at 332–33.

In *Miller*, the Court disregarded some of the trial court's findings because they were contradicted by events recorded by police-car cameras and body microphones. *See* 393 S.W.3d at 263–65. For example, the trial court found that the record was "silent as to whether any other persons were known to have been in the other rooms

or areas of the apartment [where police conducted a warrantless search after a domestic disturbance and found a controlled substance] at the time of the events described at the hearing; thus the officers were not aware if a third party was present on the scene at the time of their investigation. Two children were finally determined to be asleep in a bedroom." *Id.* at 265. But the recordings revealed that the officers recognized upon entry that the appellant was the only adult present, accepted her assurances that the only other persons present in the apartment were "her babies," and made no attempt to search the apartment for her boyfriend or children. *Id.* at 258, 265. The Court concluded that the trial court findings were "internally inconsistent and largely contradicted by the record." *Id.* at 263–64.

But this case is not like *Carmouche* or *Miller* because Gabler's dashcam video does not indisputably contradict his testimony. *See Miller*, 393 S.W.3d at 263–65; *Carmouche*, 10 S.W.3d at 332. At the suppression hearing, Gabler testified that Allison crossed the center stripe twice. When asked where the violations occurred on the dashcam video, Gabler answered with declarations such as "there" or "slightly back." Although Gabler could not identify when Allison's tires crossed the center stripe with reference to a precise timestamp on cross-examination, he did not agree the video showed no violation. He explained the violation was brief and easier to observe in person, and the video was of poor quality. The trial court found the video, though lacking in quality, showed "swerving, at least up to, if not across the fog line

11

and centerline." Even if we disagreed with the trial court's view of the video, and we do not, the video does not indisputably require us to overturn the trial court's decision.

As other courts have observed, "[R]arely will videotape evidence actually be 'indisputable.'" *State v. Tabares*, No. 08-17-00175-CR, 2019 WL 2315004, at *6 (Tex. App.—El Paso May 22, 2019, no pet.) (not designated for publication) (quoting *Tucker*, 369 S.W.3d at 187 n.1 (Alcala, J., concurring)). Video evidence may lack clarity "because of lighting, angle, focus of the camera, or distance from the object being recorded." *Id.* (citing *Tucker*, 369 S.W.3d at 187 n.1 (Alcala, J., concurring)). "We could add to that list the quality and settings of the [technology] used to view a video" in court. *Id.*

In this case, the traffic violation claimed by Gabler occurred in a matter of seconds during the dark early morning hours on a poorly lit road. The grainy quality of the video, the distance between Allison's and Gabler's vehicles, and the headlights on Allison's vehicle, together, obscure the detail of Allison's vehicle and make it difficult to see the precise position of his tires in relation to the center stripe. But, as the trial court found, the video shows Allison's vehicle swerve and approach, if not cross, the center stripe. We thus cannot say the video indisputably shows that Allison maintained his lane and did not cross the center stripe, and we will not disregard the trial court's decision as unsupported by the record. *See id.* (holding,

12

even if appellate court might have reached different conclusion than trial court as to what video of traffic stop showed, video lacked clarity and thus was not indisputable evidence trial court's finding was unsupported by record).

Accordingly, we overrule Allison's first issue.

## Jury Charge Instruction

In his second issue, Allison argues egregious harm resulted when the trial court failed to sua sponte give a jury charge instruction under Article 38.23(a) of the Code of Criminal Procedure because the evidence raised a fact issue on the lawfulness of the traffic stop. *See* TEX. CODE CRIM. PROC. art. 38.23(a).

### A.      Standard of Review and Governing Law

The Code of Criminal Procedure requires the trial court to deliver to the jury a written charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. Under Article 38.23(a), "[n]o evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws . . . shall be admitted in evidence against the accused" at trial. TEX. CODE CRIM. PROC. art. 38.23(a); *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, "'the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury

13

shall disregard any such evidence so obtained.'" *Robinson*, 377 S.W.3d at 719 (quoting TEX. CODE CRIM. PROC. art. 38.23(a)).

The defendant must meet three requirements before he is entitled to an Article 38.23(a) instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To raise a disputed fact warranting an Article 38.23(a) instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id.* at 513. This evidence can come "from any source," regardless of whether it is "strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)); *Mills v. State*, 296 S.W.3d 843, 848 (Tex. App.—Austin 2009, pet. ref'd) (observing video may constitute affirmative evidence for purpose of conducting Article 38.23(a) instruction inquiry). While a defendant's questions on cross-examination cannot, by themselves, raise a disputed fact issue, the witnesses' answers to those questions may. *Madden*, 242 S.W.3d at 513, 515.

The trial court must give an Article 38.23(a) jury charge instruction in any case in which the defense raises a factual dispute about the legality of how evidence

was obtained; the requirement for such an instruction does not depend on a request from the defendant. *See id.* at 510; *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). When a defendant fails to request such an instruction, however, we review the alleged error for egregious harm. *Roberts v. State*, 321 S.W.3d 545, 553 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd) (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In evaluating whether harm is egregious, we consider (1) the entire jury charge; (2) the evidence, including the contested issues and weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Id.*

**B.    Analysis**

Allison was convicted based on the evidentiary "fruit" of Gabler's traffic stop. Allison argues that the trial court erred by failing to sua sponte give a jury charge instruction under Article 38.23(a) because evidence presented at trial—his cross-examination of Gabler and the dashcam video—raised a contested fact issue as to whether he crossed the center stripe, giving Gabler reasonable suspicion to make the traffic stop.

15

Regarding the validity of the traffic stop, Gabler testified at trial that he saw Allison's vehicle swerve and cross the center stripe. Specifically, he testified that Allison drifted "from the center of the road to the right, across the white [fog] line, . . . regain[ed] control, drift[ed] to the left, cross[ed] the center yellow line, regain[ed] control, [returned] to the middle[,] and repeat[ed] the sequence again." As described by Gabler, this was a traffic violation. *See* TEX. TRANSP. CODE § 545.051 (driver shall drive on right half of roadway). Although Allison's trial counsel attempted to cast doubt on the credibility of Gabler's testimony through cross-examination, Gabler did not contradict himself. Nor did he make any concession when asked by Allison's counsel to point out where Allison's tires crossed the center stripe on the video, as demonstrated in these exchanges:

Q.  [Video playing] Okay. All right. Well, tell me when he crosses the center line.

A.  Okay. Slightly before now.

Q.  Right there?

A.  There and maybe about a second [sic] reverse.

. . .

A.  In this general area. In this area, may be slightly before.

Q.  Okay. Let's start from right here. That is about 3 seconds prior. Okay?

A.  There.

16

Q.     Right there? That is where you are saying he crossed the center line?

A.     Yes, sir.

. . .

Q.     You will agree with me that he is still inside the lane, correct?

A.     I disagree.

Gabler's testimony on cross-examination thus did not raise a fact issue that was affirmatively contested. *See Madden*, 242 S.W.3d at 513 (noting in case involving issue of whether appellant exceeded speed limit that "[e]ven the most vigorous cross-examination implying that [the officer] is the Cretan Liar does not raise a disputed issue [because] there must be some affirmative evidence of 'did not speed' in the record before there is a disputed fact issue."). Any fact issue must exist because of other evidence.

Allison asserts that, in addition to the cross-examination of Gabler, the dashcam video affirmatively contested Gabler's version of events because it indisputably showed that Allison did not cross the center stripe. Faced with a similar argument in *Madden*, the Court of Criminal Appeals stated, "Only if the video clearly showed that appellant affirmatively did not do something that [the officer] said that he did do, and the video clearly would have shown that conduct if it had occurred, would there by some affirmative evidence of a disputed historical fact." 242 S.W.3d at 516. Such is not the case here. As mentioned, the dashcam video

17

shows Allison's vehicle swerving to the right and left twice but does not show the exact position of Allison's tires in relation to the center stripe. The events preceding the traffic stop are obscured by the conditions of the roadway, the distance between Allison's and Gabler's vehicles, and the light emanating from Allison's headlights. Furthermore, Gabler acknowledged the video was not good quality and explained that he possessed a better view of the traffic violation than the video shows.

For these reasons, the video is not conclusive and does not contradict Gabler's testimony. *See Madden*, 242 S.W.3d at 516; *see also Henry v. State*, No. 07-18-00179-CV, 2018 WL 6187426, at *2 (Tex. App.—Amarillo Nov. 27, 2018, pet. ref'd) (mem. op., not designated for publication) (Article 38.23(a) jury charge instruction not required where person viewing video could only speculate whether appellant refused or withdrew consent to search); *Thomas v. State*, No. 10-11-00250-CR, 2013 WL 2639168, at *6 (Tex. App.—Waco June 6, 2013, no pet.) (mem. op., not designated for publication) (Article 38.23(a) jury charge instruction not required where video did not affirmatively show whether appellant properly signaled turn because view of car blinker was obscured by headlights from oncoming vehicle). The dashcam video therefore did not create the affirmatively contested issue of material fact needed to trigger the trial court's duty to charge the jury per Article 38.23(a). *See Henry*, 2018 WL 6187426, at *2; *Thomas*, 2013 WL 2639168, at *6.

Accordingly, we overrule Allison's second issue.

## Ineffective Assistance of Counsel

In his third issue, Allison contends his trial counsel rendered ineffective assistance by failing to request an Article 38.23(a) jury charge instruction. *See* TEX. CODE CRIM. PROC. art. 38.23(a).

### A. Standard of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) trial counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The defendant has the burden of proof on both issues, and his failure to make either showing by a preponderance of the evidence will defeat the ineffective assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

### B. Analysis

As we have already determined, there was no contested fact issue material to the lawfulness of the traffic stop; thus, Allison was not entitled to a jury charge instruction under Article 38.23. *See Madden*, 242 S.W.3d at 510 (listing required showings for Article 38.23(a) instruction). Trial counsel's failure to request an instruction to which Allison was not entitled is not ineffective assistance. *See Cummings v. State*, 401 S.W.3d 127, 132 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (rejecting claim of ineffective assistance when trial counsel failed to

request Article 38.23 instruction because appellant was not entitled to such instruction); *Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (same).

Accordingly, we overrule Allison's third issue.[3]

## Conclusion

Having overruled all of Allison's issues on appeal, we affirm the judgment of the trial court.

Amparo Guerra
Justice

Panel consists of Justices Kelly, Guerra, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[3] Allison seeks alternative relief in the form an order abating and remanding this cause to the trial court so that he can "file an out-of-time motion for new trial and develop the ineffective assistance of counsel issue." Allison has not identified any authority for the requested abatement and remand. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain clear and concise argument, and appropriate citations to authorities and record). Nevertheless, an abatement is not required given our conclusion that Allison was not entitled to an Article 38.23(a) jury charge instruction. *See Monakino v. State*, 535 S.W.3d 559, 563 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("To establish harm, and thus an entitlement to an abatement of an appeal to file an out-of-time motion for new trial, the appellant must demonstrate a 'facially plausible claim' that could have been developed in a motion for new trial.").